UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMIE JAMES,

      Plaintiff,

    v.

NICHOLAS VANDEMAR (OFFICER),
ANDREW MACKENZIE (DETECTIVE),
DETECTIVE KLEIN, HENRY, N.
THOMAS, C. BROCK, A. LOMARD, C.
JACUZZI, B. FARRELL, J.
LACOURSIERE, L. MASTRANGELO, C.
DAVIS, R. LEO, M. WILLIAMSON, J.
MASCHO, WILLIAMS, LAPPETITE,
DORON, KINNEY, B. CORTERM, B.
ABRAMS, R. CASTRICHINI, B.
MCDONALD, J. WHITMORE, C. BRADY,
J. OESCHISE, C. MORALES, C. LACUZZI,
NORMAN, GIFFORD, MELSON,
RYNDERS, A. PEDICARE, MERRELL,
BREEN, WAGNER, OSIKA,
MORTILLARO, CUSHMAN, and MASKIN,

      Defendants. [1]

25-CV-6290-FPG
DECISION AND ORDER

*Pro se* Plaintiff Jamie James is confined at the Auburn Correctional Facility. He filed a complaint requesting relief under 42 U.S.C. § 1983 alleging excessive force, right to counsel, and other claims related to his arrest and subsequent detention in September of 2023. ECF No. 1. He submitted a motion to proceed *in forma pauperis* ("IFP") with the required affirmation, certification, and authorization. ECF No. 2. He also filed a motion to appoint counsel. ECF No. 3.

---

[1] The Clerk of Court shall update the caption as reflected above. These defendants are not all mentioned in the caption of the complaint. Many are listed in the body of the complaint as defendants to the Second Claim. ECF No. 1 at 6-7.

Because Plaintiff meets the statutory requirements of 28 U.S.C. § 1915(a), the Court grants the motion to proceed *in forma pauperis* and screens the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)-(b).

For the reasons that follow, Plaintiff's Fourth Amendment excessive force claim, Fourth Amendment excessive pre-arraignment detention claim, and Sixth Amendment right to counsel claim may proceed to service. Plaintiff's state law claim based on a violation of § 140.20 of the New York Criminal Procedure Law is dismissed with prejudice and without leave to amend. Plaintiff's remaining claims are dismissed with leave to amend. Plaintiff's motion for appointment of counsel (ECF No. 3) is denied without prejudice. Plaintiff's request regarding calculating his time in custody (ECF No. 6) is denied without leave to amend.

## **DISCUSSION**

### I.    **Legal Standards**

#### A.    **Review Under the IFP Statutes**

A court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines the action "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2); *see* 28 U.S.C. § 1915(e)(2)(B) (setting forth the same criteria for dismissal).

#### B.    **Pleading Standards**

In evaluating a complaint, a court must "accept all factual allegations as true and must draw all inferences in the plaintiff's favor." *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*,

2

357 F.3d 197, 200 (2d Cir. 2004), even a *pro se* complaint must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint states a claim for relief if the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In other words, although a *pro se* complaint need not provide every last detail in support of a claim, it must allege sufficient factual allegations to nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  *See Komatsu v. Cubesmart, Daniels Norelli Cecere & Tavel PC*, No. 20-3676-CV, 2021 WL 6060603, at *1 (2d Cir. Dec. 20, 2021) (summary order) (to avoid *sua sponte* dismissal under the IFP statute, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face'" (quoting Twombly, 550 U.S. at 570)); *Scott Phillip Lewis v. R.L. Vallee, Inc., d.b.a. Maplefield's*, No. 24-1438, 2025 WL 1077412, at *1 (2d Cir. Apr. 10, 2025) (summary order) (same).

The Court's liberal pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  A complaint fails to state a claim if it supplies only "labels and conclusions," *Twombly*, 550 U.S. at 555, "a formulaic recitation of the elements of a cause of action," *id.*, or "'naked assertions' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Although a court is "obligated to draw the most favorable inferences that [a plaintiff]'s complaint supports, [it] cannot invent factual allegations that he [or she] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

### C.    Section 1983 Claims

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, the theory of *respondeat superior* is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d at 137, 144 (2d Cir. 2003). There is "no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Rather, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676).

### D.    Leave to Amend

Generally, a court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal, unless it "can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999)). But a court may deny leave to amend pleadings when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131

4

(2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend.").

## II.    Allegations[2]

On September 25, 2023, Nicholas Vandemar ("Vandemar"), a police officer with the Rochester Police Department, pulled Plaintiff over for a traffic violation. ECF No. 1 at 6. Plaintiff ran from Vandemar, who pursued him. *Id.* Plaintiff crashed his vehicle and "hopped out[.]" *Id.* Vandemar pursued Plaintiff on foot and, upon catching up to him, tased him and then repeatedly punched him in the face. *Id.* at 6, 10, 11. Vandemar put his service weapon underneath Plaintiff's chin. *Id.* at 6. Plaintiff said "shoot me" several times, and Vandemar shot Plaintiff underneath the left side of his chin like Vandemar wanted to assassinate him. *Id.* at 6, 11. Plaintiff "told everyone [he] wanted to die that night." *Id.* at 11.

At some point Plaintiff arrived at a hospital, where he remained handcuffed to a hospital bed and unable to leave for days from September 25, 2023 until at least October 6, 2023. *Id.* at 8. As a result of the shooting, Plaintiff had to have his jaw wired shut, a blood transfusion, a metal plate in his chin, a bone transplant, and a few surgeries. *Id.* at 11.

On September 28, 2023, Detective Andrew MacKenzie and his partner Detective Klein interrogated Plaintiff in the hospital, but Plaintiff could not talk because of the injury to his chin. *Id.* at 8. Plaintiff asked what his charges were, and the detectives said told him that it "depends[.]" *Id.* The detectives accused Plaintiff of assaulting Vandemar, which Plaintiff denied by shaking his head. *Id.* The detectives asked Plaintiff "what happened on Seventh St[,]" to which Plaintiff

---

[2] The Court accepts Plaintiff's allegations as true for purposes of screening his complaint. Page references to docket entries are to the numbering automatically generated by CM/ECF, which appears in the header of each page.

responded by writing out on paper that he needed a lawyer.  *Id.* [3]  At that point, the detectives "terminated the video" but "never provided [him] with a lawyer."  *Id.*

Plaintiff remained handcuffed to the hospital bed, "in custody [with a] 'prisoner guard'[4] with no felony complaint . . . or being charged[.]"  *Id.*  Plaintiff was not brought in front of a judge to be arraigned, and was prohibited from using the phone or having visitors.  *Id.*  Plaintiff's girlfriend hired a lawyer to represent him on or about October 6, 2023.  *Id.*  Plaintiff was not arraigned until October 8 or 10, 2023.  *Id.* at 22; ECF No. 6 at 50.[5]

The October 10, 2023 Rochester Police Department investigative action report attached to the complaint, ECF No. 1 at 12-14, provides an alternative account, as reported by law enforcement, of the September 25, 2023 encounter and shooting incident.  Per the report, Vandemar's pursuit of Plaintiff led to Plaintiff initiating a physical fight over Vandemar's taser and gun, and ultimately, Vandemar firing five shots.  *Id.* at 12-14.

Also attached to the complaint are portions of transcripts related to Plaintiff's state court criminal proceedings and interview and prisoner guard logs from Plaintiff's time in the hospital.  *Id.* at 17-28.  Plaintiff's filing at ECF No. 6, labeled "Continuation of Exhibits," provides additional transcript pages as well as some hospital records and emails regarding Plaintiff's custodial credit calculations.  ECF No. 6.  In that filing, Plaintiff requests he be given credit for the time he spent in custody from September 25, 2023 until October 6, 2023.  *Id.* at 1.

---

[3] Based on the testimony of one of the detectives, from the transcript pages Plaintiff filed, Plaintiff wrote "lawyer" twice: the first time was not fully legible, and upon the second, clearer written request for a lawyer, the detectives stopped interviewing him and left the hospital. ECF No. 6 at 57.

[4] All of the defendants, except for Vandemar, are named in association with Plaintiff's claims arising from his confinement at the hospital.  These named defendants match the officers listed on the prisoner guard logs attached to Plaintiff's complaint. ECF No. 1 at 17-21.

[5] Plaintiff's exact date of arraignment is unclear.  Documents attached to his filing at ECF No. 6 suggest that the Rochester Police Department transferred custody of Plaintiff to the Monroe County Sheriff's Office on October 6, 2023. ECF No. 6 at 1, 36-38.

Plaintiff has not specified whether he sues the individual defendants in their individual or official capacity. Since a *pro se* plaintiff "should not have the complaint automatically construed as focusing on one capacity to the exclusion of another," the Court construes the claims as brought in both capacities. *Frank v. Relin*, 1 F.3d 1317, 1326 (2d Cir. 1993).

## III.    Analysis

### A.    Official Capacity and Municipal Liability

"[A] suit against a municipal officer in his or her official capacity is functionally equivalent to a suit against the entity of which the officer is an agent." *Baines v. Masiello*, 288 F. Supp. 2d 376, 384 (W.D.N.Y. 2003) (citing, *inter alia*, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). The individual Defendants are alleged to be officers of the Rochester Police Department. Official capacity claims against these Defendants are the equivalent of a suit against the municipal entity— the City of Rochester. *See Graham*, 473 U.S. at 165-66 ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n.55 (1978))).

Although municipalities are considered "persons" for purposes of § 1983, a local government may not be held liable under § 1983 unless the challenged action was performed pursuant to a municipal policy or custom. *Monell*, 436 U.S. at 694. To hold a municipality liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).

An official policy or custom can be established by showing:

(1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so

persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates.

*Kurmangaliyev v. City of New York*, No. 22-CV-5656 (LDH), 2023 WL 8654023, at *2 (E.D.N.Y. Dec. 14, 2023) (collecting cases).

Plaintiff's allegations do not suggest that an official custom or policy of the City of Rochester led to or caused the alleged constitutional violations here. The Court therefore finds that the complaint does not plausibly allege municipal liability, and the claims against the individual defendants in their official capacity are dismissed with leave to amend.

## B.    Fourth Amendment: Excessive Force Claim

The use of force by a police officer in the course of an arrest is analyzed under the Fourth Amendment and requires a careful analysis of the "facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). Courts consider the following factors:

> [1] the severity of the crime at issue, [2] whether the suspect posed an immediate threat to the safety of the officers or others, [3] whether the suspect was actively resisting arrest or attempting to evade arrest by flight, [4] the need for the application of force, [5] the relationship between the need and the amount of force that was used, [6] the extent of the injury inflicted, and [7] whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Linton v. Zorn*, 135 F.4th 19, 31 (2d Cir. 2025) (citation modified). The objective reasonableness inquiry "is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).

Courts must evaluate the propriety of the use of force from the perspective of a reasonable officer at the scene, without the benefit of hindsight.  *See Brown v. City of New York*, 798 F.3d

94, 100 (2d Cir. 2015) (citing *Graham*, 490 U.S. at 396).  Courts must also allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (quoting *Graham*, 490 U.S. at 397).

The complaint itself alleges that Vandemar, upon catching up with Plaintiff, tased him, repeatedly punched him in the face, and then shot him underneath his chin. ECF No. 1 at 6.  While Plaintiff's account suggests that this use of force was not justified, the attached police report (ECF No. 1 at 12-14) paints a different picture of the incident and Vandemar's use of his taser and weapon.  However, at this juncture, and reading Plaintiff's allegations liberally, the Court concludes that Plaintiff has alleged a colorable excessive force claim that may proceed to service against Vandemar.[6]

## C.    Claims Related to Excessive Pre-Arraignment Detention

Plaintiff alleges that, after being shot, he was handcuffed to a hospital bed for at least eleven days before he was arraigned or formally charged.  Plaintiff alleges this detention amounted to a "kidnapping" and violated § 140.20 of the New York Criminal Procedure Law ("CPL"), as well as his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.[7] ECF No. 1 at 9-11.  Plaintiff asserts these claims against all defendants except Vandemar.

---

[6] Permitting this or any claim to proceed to service does not immunize it from a dismissal or summary judgment motion. *See Jones v. Sullivan*, No. 9:19-CV-0025(BKS)(CFH), 2020 WL 5792989, at *5 (N.D.N.Y. Sept. 29, 2020) ("A court's initial screening under § 1915(e) and/or § 1915A does not preclude a later dismissal under Fed. R. Civ. P. 12(b)(6)." (citing *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 434-35 (N.D.N.Y. 2009)).

[7] Plaintiff does not allege that he was falsely arrested or that there was no probable cause to arrest him—rather, his argument is focused on being detained for a prolonged period before being brought before a judge or arraigned. *See Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (citation modified) (setting forth the elements of a false arrest claim: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.").

1.  <u>State Law Claim</u>

Plaintiff cites to CPL § 140.20, which generally requires that a person arrested without a warrant must be brought before a court "without necessary delay[.]"[8]

The Second Circuit has held that CPL § 140.20 does not provide a private right of action under which a plaintiff may sue. *See Walker v. City of New York*, 638 F. App'x 29, 33 (2d Cir. 2016) (summary order) (noting "well-settled Circuit precedent . . . that § 140.20(1) does not create a private right of action." (citing *Watson v. City of New York*, 92 F.3d 31, 37 (2d. Cir. 1996))); *see also Watson*, 92 F.3d at 36-37 (holding that there is not private right of action under [CPL] § 140.20); *Esperanza v. City of New York*, 325 F. Supp. 3d 288, 305 (E.D.N.Y. 2018) (finding that a plaintiff's state law claims for excessive pre-arraignment detention fail as a matter of law because "the Second Circuit has made clear that [CPL] § 140.20 does not provide a private right of action under which plaintiff may sue"); *Palacios v. City of New York*, No. 15-CV-386, 2017 WL 4011349, at *10 (S.D.N.Y. Sept. 11, 2017) (same).

Accordingly, Plaintiff's state law claim based on a violation of § 140.20 fails as a matter of law. This claim is dismissed without leave to amend.

2.  <u>Section 1983 Claim</u>

The Fourth Amendment prohibits "unreasonable . . . seizures" and "governs the procedures applied during some period following an arrest." *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005). "The traditional Fourth Amendment rule is that police seizures of criminal suspects must be supported by probable cause that the person seized has committed or is committing a

---

[8] Plaintiff incorrectly states that this law requires an arraignment within "24-144 hours" of the arrest. ECF No. 1 at 8. As the Second Circuit recently observed, "the New York Court of Appeals has interpreted a pre-arraignment delay of more than 24 hours to be unnecessary." *Glover v. Onondaga County*, No. 24-630-CV, 2025 WL 1077532, at *4 n.3 (2d Cir. Apr. 10, 2025) (citing *People ex rel. Maxian v. Brown*, 77 N.Y.2d 422, 426-27 (1991)).

10

crime." *Zarkower v. City of New York*, 461 F. Supp. 3d 31, 39 (E.D.N.Y. 2020) (citing *Dunaway v. New York*, 442 U.S. 200, 208 (1979)).  "[T]he existence of probable cause [should] be decided by a neutral and detached magistrate whenever possible." *Id.* (quoting *Gerstein v. Pugh*, 420 U.S. 103, 112 (1975)).  Such a determination is made, ideally, before an arrest, so that the arrest is made pursuant to an arrest warrant signed by a magistrate. *Id.*  (citing *Gerstein*, 420 U.S. at 113).  But an officer may also arrest an individual based on an "on-the-scene assessment of probable cause[.]" *Id.*  A warrantless arrest may be followed by "a brief period of detention to take the administrative steps incident to arrest" but a judicial determination of probable cause must occur "promptly after arrest." *Id.* (quoting *Gerstein*, 420 U.S. at 114).

"The Supreme Court has held that when a warrantless arrest is made, a judicial determination as to the existence of probable cause must be made 'promptly'"—such a determination is "generally considered prompt if made within 48 hours of the arrest." *Glover v. Onondaga County*, No. 24-630-CV, 2025 WL 1077532, at *4 (2d Cir. Apr. 10, 2025) (summary order) (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 55-56 (1991)).  "When the delay from arrest to arraignment exceeds forty-eight hours, 'the arrested individual does not bear the burden of proving an unreasonable delay.  Rather, the burden shifts to the [defendant] to demonstrate the existence of a bona fide emergency or other extraordinary circumstance.'" *See Tortora v. City of New York*, No. 15-CV-3717 (MKB), 2019 WL 9100369, at *10 (E.D.N.Y. Mar. 30, 2019), *aff'd*, 804 F. App'x 35 (2d Cir. 2020) (summary order) (quoting *County of Riverside*, 500 U.S. at 57):

Plaintiff's detention for roughly two weeks without being charged or arraigned falls well outside the presumptively reasonable period of 48 hours (two days).  Plaintiff's allegations, liberally construed, support his claim that he was "in custody" for most, if not all, of that period—

that is, he was handcuffed to the hospital bed, guarded by law enforcement, unable to leave, and denied visitors or use of the phone. ECF No. 1 at 8. And despite his injuries, Plaintiff appears to have been in a stable condition, and conscious, for some of this time—evidenced by the fact that MacKenzie and Klein tried to interview him at the hospital within a few days of the shooting. These allegations are further bolstered by the interview and prisoner guard logs, *see id.* at 17-21, as well as the hearing transcript pages, *see id.* at 22-23, attached to the complaint. Thus, the complaint alleges an unreasonable delay between Plaintiff being taken into police custody and being arraigned or otherwise formally charged, with no apparent emergency or other extraordinary circumstances.

This claim may proceed to service against all Defendants except for Vandemar.[9]

**D.    Fifth Amendment Claim**

The Fifth Amendment "protects individuals against self-incrimination and guarantees a right to counsel for custodial interrogations." *United States v. Figaro*, 568 F. Supp. 3d 459, 465 (S.D.N.Y. 2021) (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)); U.S. Const. amend. V ("No person shall . . . be compelled in any criminal case to be a witness against himself[.]"). Under the Supreme Court's decision in *Miranda*, an individual who is "taken into custody" must "be warned prior to any questioning . . . that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." 384 U.S. at 478-79. After the accused has "expressed his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made

---

[9] The Court notes that to succeed on this claim, Plaintiff ultimately will need to demonstrate each defendant's personal involvement. At this stage, it is sufficient for Plaintiff to name each of these officers who were present at the hospital and guarded him from September 25 until October 8, 2023—as confirmed by the interview logs attached to Plaintiff's complaint. ECF No. 1 at 17-21.

available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

While a failure to administer *Miranda* warnings alone cannot serve as the basis for a § 1983 claim, *see Vega v. Tekoh*, 597 U.S. 134, 141 (2022), a claim under the Fifth Amendment self-incrimination clause may exist if "coercion was applied to obtain . . . inculpatory statements" that "were used against the plaintiff in a criminal proceeding."[10] *Ortiz v. Stambach*, 137 F.4th 48, 67 (2d Cir. 2025) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) ("While a defendant has a constitutional right not to have a coerced statement used against him, a defendant does not have a constitutional right to receive *Miranda* warnings.")).

Plaintiff alleges that Mackenzie and Klein interrogated him on September 28, 2023 while he was under prison guard in the hospital, without a lawyer. ECF No. 1 at 8-9. Plaintiff, however, has not alleged that he made any incriminating statements to these defendants, or that any such statement was used against him in a criminal proceeding. *See Deshawn E.*, 156 F.3d at 346 ("Even if it can be shown that a statement was obtained by coercion, there can be no Fifth Amendment violation until that statement is introduced against the defendant in a criminal proceeding."); *Kittle v. Brady*, No. 23-CV-1790 (JMA) (LGD), 2025 WL 2466996, at *5 (E.D.N.Y. Aug. 27, 2025) (finding that plaintiff "failed to state a claim of a violation of his rights under the Fifth Amendment" where he did "not allege that he made any statements to Defendants during th[e] alleged interrogation that were used against him in a subsequent criminal trial"). It also appears

---

[10] While the right is often characterized as a trial right, the Second Circuit has held that a coerced statement does not have to be introduced at trial to violate a plaintiff's Fifth Amendment rights. *See Higazy v. Templeton*, 505 F.3d 1561 (2d Cir. 2007) (use of a statement obtained in violation of the Fifth Amendment at a bail hearing in a material witness proceeding could support a § 1983 action); *see also Weaver v. Brenner*, 40 F.3d 527, 535-36 (2d Cir. 1994) (use of a coerced confession before a grand jury was a violation of the self-incrimination clause).

that the detectives stopped interviewing Plaintiff and left hospital after his request for attorney.[11]

ECF No. 1 at 8; ECF No. 6 at 57-58.  And the transcript pages Plaintiff has filed, albeit not

complete, suggest that any statements that he may have made during his time in the hospital were

not introduced in the state criminal proceeding.  ECF No. 6 at 4, 6.[12]

For these reasons, Plaintiff's Fifth Amendment claim is dismissed with leave to amend.  To

the extent Plaintiff is able to do so, any amended complaint shall include facts suggesting that he

was coerced into making incriminating statements that were used against him at a criminal

proceeding.

### E.    Sixth Amendment: Right to Counsel

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall

enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI

In general, "a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after

the time that adversary judicial proceedings have been initiated against him."  *Kirby v. Illinois*,

406 U.S. 682, 688 (1972); *see also Deshawn E.*, 156 F.3d at 349 (quoting *Kirby*, 406 U.S. 688).

When "the underlying charges against [a plaintiff are] state law charges, the Court looks to state

law to determine when the adversarial judicial proceedings were initiated."  *Nimkoff v. Dollhausen*,

751 F. Supp. 2d 455, 465 (E.D.N.Y. 2010) (citing *Deshawn E.*, 156 F.3d at 349).  "Generally, New

York State courts hold that 'a criminal proceeding, and with it the right to counsel, is initiated by

the filing of an accusatory instrument.'"  *Nimkoff*, 751 F. Supp. 2d at 465 (quoting *Deshawn E.*,

---

[11] Based on the testimony of one of the detectives, Plaintiff wrote "lawyer" twice: the first time was not fully legible, and upon the second, clearer written request for a lawyer, the detectives stopped interviewing him and left the hospital. ECF No. 6 at 57.

[12] As stated, these transcript pages are incomplete and do not provide a full review of what transpired during Plaintiff's case.  Plaintiff may correct this Court's inference that his statements were excluded from use in his criminal case in any amended complaint.

156 F.3d at 349). "In addition, the right to counsel attaches 'if substantial rights of an accused may be affected by a particular proceeding . . . .'" *Id.* (quoting *Meadows v. Kuhlmann*, 812 F.2d 72, 76 (2d Cir. 1987)). "[I]n New York State [this] includes 'when a defendant was brought to the scene of a crime by court order, placed in a post-indictment lineup, or compelled to appear before a grand jury.'" *Id.*

As discussed above, Plaintiff's request for counsel at the hospital occurred prior to any accusatory instrument or charges being filed against him. But Plaintiff has plausibly alleged a lengthy, unjustified delay in being arraigned, brought before a judge, or otherwise formally charged while he remained in custody—and further alleges that the officers refused to allow Plaintiff access to his hired lawyer. *See* ECF No. 6 at 35. At this initial stage, and based on these allegations, the Court will permit Plaintiff's Sixth Amendment claim to service.[13] *Accord Horn v. Smith*, No. 94 CV 2781, 1997 WL 391461, at *3 (E.D.N.Y. July 7, 1997) (citing New York caselaw that "unnecessary delay alone in filing an accusatory instrument does not cause the right to counsel to attach" but noting that the right may be raised if police delayed the filing or arraignment in order to deny the individual access to counsel).

---

[13] The Court notes that Plaintiff's right to counsel claims may be barred by the favorable termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, a plaintiff's civil rights claim must be dismissed if a judgment for the plaintiff "would necessarily imply the invalidity of his conviction." *Id.* at 487. Based on the current allegations, which do not provide many details about Plaintiff's criminal proceedings and any resulting convictions, the Court cannot determine at this initial screening stage whether these claims would challenge the validity of any convictions and related confinement.

### F.    Remaining Claims

In connection with his allegations regarding his hospital detention, Plaintiff asserts "(negligent) emotional distress,"[14] "due process,"[15] "access to courts,"[16] and "unlawful imprisonment[.]"[17] ECF No. 1 at 9. To the extent Plaintiff seeks to allege these claims separately from those above, he has not alleged facts to support these claims. Although a court is "obligated to draw the most favorable inferences that [a plaintiff]'s complaint supports, [it] cannot invent factual allegations that he [or she] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). Therefore, these claims are dismissed, with leave to amend.

## IV.    Motions

### A.    Motion for Appointment of Counsel

Pursuant to 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants. When determining whether appointment of counsel is appropriate, courts undertake a two-step

---

[14] "To plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Eckert v. City of Buffalo*, No. 22-CV-540-LJV, 2025 WL 2836547, at *23 (W.D.N.Y. Oct. 6, 2025) (quoting *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021)).

[15] Plaintiff's due process claim appears to be premised on the same conduct underlying the Fourth Amendment claims, and therefore is dismissed as duplicative of those claims but with leave to amend. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'") (quoting *Graham*, 490 U.S. at 395).

[16] It is unclear if Plaintiff's recitation of "access to courts" refers to the lengthy delay before he was arraigned or otherwise brought before a judge. Nevertheless, Plaintiff may amend this claim in his amended complaint if he chooses. In order to plausibly allege a First Amendment denial of access to courts claim, a plaintiff must demonstrate "that a defendant caused 'actual injury,' *i.e.*, took or was responsible for actions that 'hindered . . . efforts to pursue a [non-frivolous] legal claim.'" *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) (citation modified); *see Kaminski v. Semple*, 796 F. App'x 36, 39 (2d Cir. 2019) (summary order) ("Actual injuries include the dismissal of a complaint for a technical deficiency that would have been cured with appropriate legal facilities, or that a prisoner was 'stymied' from bringing an arguably actionable claim by the 'inadequacies of the law library.'" (citation modified)).

[17] Similarly to a false arrest claim, "[u]nder New York law, the elements of a false imprisonment claim are: '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Singer*, 63 F.3d at 118.

inquiry. First, the court determines "whether the indigent's position seems likely to be of substance," and if the claim meets this threshold requirement, the court should then consider the following factors:

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented . . . , the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986).

At this stage, it is too early to determine whether Plaintiff's surviving claims are likely to be of substance. Nor does there appear to be any special reason why appointment of counsel is warranted at this time, particularly since Plaintiff has demonstrated a capacity to clearly communicate the factual basis of his claims to the Court. *See Kearse v. Aini*, 19-CV-1579V(Sr), 2023 WL 11910925, at *1 (W.D.N.Y. Feb. 1, 2023) (denying motion to appoint counsel where the plaintiff was able to communicate claims to court and it could not yet be determined whether claims were of merit). For these reasons, the motion is denied without prejudice.

**B.    Request Regarding Crediting Plaintiff's Time in Custody**

Plaintiff requests that his time in custody from September 25, 2023 until October 6, 2023 be counted towards his sentence. Plaintiff has included copies of correspondence with the Monroe County Sheriff's Office and DOCCS records coordinators. ECF No. 6 at 36-38.

The Court cannot grant Plaintiff the relief he seeks because his claim is barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994) and related caselaw. "[W]here success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his

available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Muhammad v. Close,* 540 U.S. 749, 751 (2004) (per curiam).

Therefore, a prisoner's claim "challenging a decision that affects the length of confinement is properly brought in a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254, rather than in a civil rights action." *See Gentile v. Burnett*, No. 22-CV-8411 (LTS), 2022 WL 16950220, at *5 (S.D.N.Y. Nov. 14, 2022) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (holding that state prisoners deprived of good-time credits as a result of disciplinary proceedings must file petition under § 2254 and not 42 U.S.C. § 1983)); *accord, e.g., Peralta v. Vasquez*, 467 F.3d 98, 102 (2d Cir. 2006). Accordingly, the proper vehicle for Plaintiff's claim seeking credit for his time under prison guard in the hospital is a Section 2254 *habeas* petition.[18]

## CONCLUSION

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915, and his request to proceed *in forma pauperis* is granted.

For the above reasons, Plaintiff's Fourth Amendment excessive force claim, Fourth Amendment excessive pre-arraignment detention claim, and Sixth Amendment right to counsel claim may proceed to service. Plaintiff's state law claim based on a violation of CPL § 140.20 is dismissed with prejudice and without leave to amend. Plaintiff's remaining claims are dismissed with leave to amend. Plaintiff's motion for appointment of counsel is denied without prejudice. Plaintiff's motion regarding calculating his time in custody is denied.

Plaintiff is advised that an amended complaint **completely replaces** the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v.*

---

[18] The Court further notes that a prerequisite to habeas corpus relief is the exhaustion of all available state remedies. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(1)(A). Before bringing constitutional claims in federal court in a § 2254 petition, therefore, Plaintiff must present his claims to the state court for review.

*Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Therefore, any amended complaint must include all allegations against each Defendant so that the amended complaint stands alone as the only complaint in this action.

Plaintiff is further advised that he has been granted leave to amend only those claims addressed above. A district court has the inherent authority to dismiss claims that exceed the scope of the court's order granting leave to amend. *See Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order) (collecting cases).

## ORDER

In light of the above,

IT HEREBY IS ORDERED that Plaintiff's motion to proceed IFP (ECF No. 2) is granted; and it is further

ORDERED that the Fourth Amendment excessive force claim against Vandemar; Fourth Amendment excessive pre-arraignment detention claim against all defendants except Vandemar; and Sixth Amendment right to counsel claim shall proceed to service against Mackenzie and Klein shall proceed to service; and it is further

ORDERED that Plaintiff's state law claim based on a violation of CPL § 140.20 is dismissed with prejudice and without leave to amend; and it is further

ORDERED that the remaining claims alleged in the complaint are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim but with leave to amend; and it is further

ORDERED that Plaintiff's motion for appointment of counsel (ECF No. 3) is denied without prejudice; and it is further

ORDERED that Plaintiff's request regarding calculating his time in custody (ECF No. 6) is denied; and it is further

ORDERED that Plaintiff may file an amended complaint as directed above by no later than **December 19, 2025**; and it is further

ORDERED that the Clerk of the Court shall send to Plaintiff with this order a copy of the original complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that if Plaintiff does not file an amended complaint by **December 19, 2025**, the Clerk of the Court shall cause the United States Marshals Service to serve copies of the summons, the complaint, and this order upon all defendants, without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor;[19] and it is further

ORDERED that pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (1997), the Corporation Counsel for the City of Rochester is requested to ascertain the full name, with correct spelling, and last known service address of all defendants within 30 days of the date of this Order. The Corporation Counsel need not undertake to defend or indemnify this individual at this time. Rather, this Order merely provides a means by which Plaintiff may name and properly serve this defendant, as instructed by the Second Circuit in *Valentin*.

The Corporation Counsel shall produce the information specified above within 30 days of the date of this Order by mail to the *Pro Se* Litigation Unit, United States District Court, Robert H. Jackson United States Courthouse, 2 Niagara Square, Buffalo, New York 14202. Upon receipt

---

[19] If Plaintiff files an amended complaint as directed in this Order, service will be deferred until such time as the Court has screened the amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)-(b).

of this information, the Clerk of the Court shall amend the caption of this action to reflect the full names of these defendants;[20] and it is further

ORDERED that the Clerk of the Court shall forward a copy of this Order and the complaint by email to Patrick Beath, City of Rochester Corporation Counsel at patrick.beath@cityofrochester.gov; and it is further

ORDERED that, upon service, pursuant to 42 U.S.C. § 1997e(g)(2), the defendants shall answer or respond to the remaining claims of the complaint; and it is further

ORDERED that pursuant to Western District of New York Local Rule of Civil Procedure 5.2(d), Plaintiff must immediately notify the Court in writing each time his address changes. Failure to do so may result in dismissal of the action with prejudice.

IT IS SO ORDERED.

Dated:    _Nov. 12_, 2025
          Rochester, New York

                              _____
                              HON. FRANK P. GERACI, JR.
                              United States District Court
                              Western District of New York

---

[20] Responses filed electronically in CM/ECF are reviewed by Court personnel before being made public.