UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMIE JAMES,
    Plaintiff,

  v.

DETECTIVE ANDREW MACKENZIE,
DETECTIVE MATTHEW KLEIN, OFFICER
JESSICA LACOURSIERE, OFFICER
BRADLEY FARRELL, OFFICER LOUIS
MASTRANGELO, OFFICER CHELSEA
DAVIS, OFFICER ROGER LEO, OFFICER
MATTHEW WILLIAMSON, OFFICER JOSEPH
MASCHO, SGT. DAVID WILLIAMS, OFFICER
BRANDON LEPPETITO, OFFICER RICHARD
DORON, OFFICER BENJAMIN KINNEY,
OFFICER BRANDON CONTRERAS, BRIAN
ABRAMS, OFFICER RYAN CASTRICHINI,
OFFICER BERNARD MCDONALD, OFFICER
JUSTIN WHITMORE, OFFICER CHAD
BRADY, OFFICER JESSICA OESCHISE,
DETECTIVE CHRISTOPHER MORALES,
OFFICER CHRISTOPHER IACUZZI, OFFICER
CONNOR BROCK, OFFICER ALEXANDER
LOMBARD, OFFICER DUANE HENRY,
OFFICER NICHOLAS THOMAS, OFFICER
ERIC NORMAN, OFFICER NICHOLAS
GIFFORD, OFFICER MICHAEL MELSON,
OFFICER COLLIN RYNDERS, OFFICER
ANTHONY PEDICONE, OFFICER
ALEXANDER MERRELL, SGT. JAMES
BREEN, OFFICER ADAM WAGNER, SGT.
DOUGLAS OSIKA, OFFICER MICHAEL
MORTILLARO, SGT. MATTHEW CUSHMAN,
OFFICER KELLY MACKIN, and OFFICER
NICHOLAS VANDEMAR,
    Defendants.[1]

25-CV-6290-FPG
DECISION AND ORDER

## INTRODUCTION

*Pro se* Plaintiff Jamie James ("Plaintiff"), currently confined at the Auburn Correctional

Facility, filed this action seeking relief under 42 U.S.C. § 1983 related to his arrest and subsequent

---

[1] The Clerk of Court shall update the caption as reflected above. The Court uses the corrected names and spellings provided in the *Valentin* order, ECF No. 8, for the defendants identified in the amended complaint. While the *Valentin* order identifies both an officer and detective with the surname Henry, the Court assumes that Plaintiff is referring to Officer Duane Henry because he has identified that defendant as a local City of Rochester police officer. ECF No. 10 at 21.

detention in September of 2023. ECF No. 1. The Court previously granted Plaintiff's application to proceed *in forma pauperis* ("IFP") (ECF No. 2) and screened his complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. ECF No. 7 ("the initial screening order").[2]

In the initial screening order, the Court (1) permitted Plaintiff's Fourth Amendment excessive force claim, Fourth Amendment excessive pre-arraignment detention claim, and Sixth Amendment right to counsel claim to proceed to service against certain defendants; (2) dismissed Plaintiff's state law claim based on a violation of CPL § 140.20 with prejudice and without leave to amend; (3) dismissed Plaintiff's remaining claims with leave to amend; (4) denied Plaintiff's motion for appointment of counsel without prejudice; and (5) denied Plaintiff's motion regarding calculating his time in custody. *Id.*

Plaintiff timely filed an amended complaint, ECF No. 10, which the Court now screens under §§ 1915(e)(2)(B) and 1915A. For the reasons that follow, Plaintiff's Fourth Amendment excessive force claim against VanDeMar, Fourth Amendment excessive pre-arraignment detention and false imprisonment claims against all defendants except VanDeMar, and Sixth Amendment right to counsel claim against Mackenzie and Klein may proceed to service. Plaintiff's remaining claims are dismissed without leave to amend.

**DISCUSSION**

I.    <u>**Legal Standards**</u>

A.    **Review Under the IFP Statutes**

A court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines the action "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2)

---

[2] The Court assumes familiarity with the initial screening order and will only reference it as necessary.

2

seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2); *see* 28 U.S.C. § 1915(e)(2)(B) (setting forth the same criteria for dismissal).

Generally, a court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal, unless it "can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999)). "[A]n opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend." *Bivona v. McLean*, No. 919CV0303MADTWD, 2019 WL 2250553, at *5 (N.D.N.Y. May 24, 2019) (citing cases); *Cancel v. New York City Hum. Res. Admin./Dep't of Soc. Servs.*, 527 F. App'x 42, 44 (2d Cir. 2013) (summary order) ("[T]he district court had already permitted [the plaintiff] to amend his complaint once, and nothing in his amended complaint suggested that he would be able to state a valid . . . claim if he were granted leave to amend a second time. Therefore, granting [the Plaintiff] leave to amend his amended complaint as to these claims would have been futile."); *Cato v. Zweller*, No. 6:21-CV-6207 EAW, 2023 WL 8653857, at *2 (W.D.N.Y. Dec. 14, 2023) (dismissing the amended complaint with prejudice because it "does not remedy any of the pleading deficiencies identified in the Screening Order").

## II.     The Amended Complaint[3]

The allegations of the amended complaint largely match those in the original complaint.

On September 25, 2023, at approximately 9:00 p.m., Nicholas VanDeMar ("VanDeMar"), a police officer with the Rochester Police Department, pulled Plaintiff over for a traffic violation. ECF No. 10 at 29. Plaintiff ran from VanDeMar, who pursued him. *Id.* Plaintiff crashed his vehicle and "hopped out[.]" *Id.* VanDeMar pursued Plaintiff on foot and, upon catching up to him, tased him and then repeatedly punched him in the face. *Id.* VanDeMar put his service weapon underneath Plaintiff's

---

[3] The Court accepts Plaintiff's allegations as true for purposes of screening his amended complaint. Page references to docket entries are to the numbering automatically generated by CM/ECF, which appears in the header of each page.

chin. *Id.* Plaintiff said "shoot me[,]" and VanDeMar shot Plaintiff "execution style" underneath the left side of his chin. *Id.* at 29, 32.

Plaintiff was taken to Strong Memorial Hospital, where he remained handcuffed to a hospital bed and unable to leave from September 25, 2023 until October 6, 2023. *Id.* at 32-33. As a result of the shooting, Plaintiff had to have his "jaw wired shut for weeks (6), a stomach feeding tube, [a] blood transfusion, a trachea, reconstruction on [his] chin/jaw, a bone transplant from [his] left hip to [his] jaw/chin[,]" and a few surgeries. *Id.* at 30.

On September 28, 2023, at about 2:00, Detective Andrew MacKenzie ("MacKenzie") and his partner Detective Matthew Klein ("Klein") interrogated Plaintiff in the hospital, but Plaintiff could not talk because of the injury to his chin. *Id.* at 32. Plaintiff asked in writing what his charges were, and the detectives told him that it "depends[.]" *Id.* The detectives accused Plaintiff of assaulting VanDeMar, which Plaintiff denied by shaking his head. *Id.* The detectives asked Plaintiff "what happened on Seventh Street[,]" to which Plaintiff responded by writing on paper that he needed a lawyer. *Id.* At that point, the detectives "terminated the video" but "never provided [him] with a lawyer." *Id.*

Plaintiff was handcuffed to the hospital bed under a "prisoner guard" from September 25, 2023 until October 6, 2023, "in custody with no felony complaint . . . [nor] charged[.]" *Id.* at 32-33. Plaintiff remained in custody, without knowing that a grand jury proceeding was taking place, while detectives were able to continue their investigation and get information about his criminal case. *Id.* at 33. Plaintiff was not indicted until a lawyer was hired. *Id.* at 32.

During this period, the Rochester Police Department rotated officers for the prisoner guard. *Id.* at 34. "Each officer had [Plaintiff] handcuffed to the hospital bed." *Id.* Plaintiff lists the times and

4

dates each officer participated as prisoner guard and kept him handcuffed. *Id.* at 34-36.[4]

Liberally construed, the amended complaint asserts the following claims: excessive force, excessive pre-arraignment detention and false imprisonment, custodial interrogation, right to counsel, access to courts, and negligent infliction of emotional distress. *Id.* at 28, 31-34.

### III.    Analysis

Plaintiff's amended complaint sues all defendants except VanDeMar in an official capacity only. ECF No. 10 at 12-25.  Given Plaintiff's *pro se* status, the Court will liberally construe the claims as brought against the defendants in their individual capacities as well. *Reynolds-El v. Strackbein*, No. CV 3:25-CV-00951 (KAD), 2025 WL 3470483, at *4 (D. Conn. Dec. 3, 2025) ("[The Court] will read [the plaintiff's] *pro se* complaint liberally and presume that he intended to name the defendants in both their individual and official capacities, to the extent applicable.").

### A.    Official Capacity Claims

As the initial screening order explained, Plaintiff's official capacity claims against Defendants are the equivalent of a suit against the municipal entity—the City of Rochester. *See* ECF No. 7 at 7 (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).  The initial screening order also explained that a municipality, and its officials in their official capacities, cannot be held liable under § 1983 unless the challenged action was taken pursuant to a municipal policy or custom. *Id.* (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).

As with the complaint, Plaintiff's amended complaint does not allege facts suggesting that an official custom or policy of the City of Rochester led to or caused the alleged constitutional violations here.  The Court therefore finds that the amended complaint does not plausibly allege municipal liability, and the claims against the individual defendants in their official capacities are dismissed.

---

[4] This list appears to mirror the prisoner guard logs attached to Plaintiff's original complaint. *See* ECF No. 1 at 17-21.  As in the original complaint, all of the defendants, except for VanDeMar, are named in association with Plaintiff's claims arising from his confinement at the hospital.

5

### B.    Individual Capacity Claims

### 1.   Claims Proceeding to Service

The initial screening order concluded that Plaintiff's Fourth Amendment excessive force claim against VanDeMar, Fourth Amendment excessive pre-arraignment detention claim against all defendants except VanDeMar, and Sixth Amendment right to counsel claim against Mackenzie and Klein were sufficient to proceed to service under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

The amended complaint's allegations related to these claims closely match those in the original complaint. Accordingly, Plaintiff's amended complaint plausibly alleges a Fourth Amendment excessive force claim against VanDeMar, a Fourth Amendment excessive pre-arraignment detention claim against all defendants except VanDeMar, and a Sixth Amendment right to counsel claim[5] against Mackenzie and Klein that may proceed to service.[6]

### 2.   False Imprisonment

As the initial screening order explained (ECF No. 7 at 16 n.17), the elements of a false imprisonment claim under New York Law are: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (citation modified); *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019). Generally "[a] claim for false arrest is equivalent to a claim for false imprisonment, with the same analysis applied to both claims." *Saheed v. City of New York*, No. 17 CIV. 1813 (KPF), 2020 WL

---

[5] As it did in the initial screening order (ECF No. 7 at 15 n.13), the Court notes that Plaintiff's right to counsel claims may be barred by the favorable termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994). The Court does not have enough information at this stage as to whether these claims would challenge the validity of any conviction(s) and related confinement.

[6] Permitting this or any claim to proceed to service does not immunize it from a dismissal or summary judgment motion. *See Jones v. Sullivan*, No. 9:19-CV-0025(BKS)(CFH), 2020 WL 5792989, at *5 (N.D.N.Y. Sept. 29, 2020) ("A court's initial screening under § 1915(e) and/or § 1915A does not preclude a later dismissal under Fed. R. Civ. P. 12(b)(6)." (citing *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 434-35 (N.D.N.Y. 2009)).

1644006, at *8 (S.D.N.Y. Apr. 2, 2020) (citing *Posr* v. *Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) ("In New York, the tort of false arrest is synonymous with that of false imprisonment.")). "But even if an initial arrest is valid, a claim for false imprisonment lies under state law if a plaintiff is thereafter unreasonably detained." *Zalewski v. City of New York*, No. 113CV7015ARRPK, 2018 WL 5113137, at *8 (E.D.N.Y. Oct. 19, 2018) (citation modified).

At this stage, construing the allegations liberally, the Court finds that Plaintiff's false imprisonment claim may proceed to service against all Defendants except VanDeMar.[7]

### 3. Custodial Interrogation Claim

As the initial screening order explained (ECF No. 7 at 12-13), a failure to administer *Miranda* warnings alone cannot serve as the basis for a § 1983 claim, *see Vega v. Tekoh*, 597 U.S. 134, 141 (2022). However, a claim under the Fifth Amendment self-incrimination clause may exist if "coercion was applied to obtain . . . inculpatory statements" that "were used against the plaintiff in a criminal proceeding." *Ortiz v. Stambach*, 137 F.4th 48, 67 (2d Cir. 2025) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) ("While a defendant has a constitutional right not to have a coerced statement used against him, a defendant does not have a constitutional right to receive *Miranda* warnings.")).

As in the original complaint, Plaintiff alleges that Mackenzie and Klein interrogated him on September 28, 2023 while he was under prison guard in the hospital, without a lawyer. ECF No. 10 at 32. Plaintiff indicates that the detectives stopped interviewing Plaintiff when he wrote down that he wanted a lawyer. *Id.* But Plaintiff again fails to allege that he made any incriminating statements to

---

[7] The Court notes that this claim ultimately may be indistinguishable from Plaintiff's other Fourth Amendment claim concerning his delay in arraignment and prisoner guard at the hospital. Some courts have analyzed similar false imprisonment claims using the framework articulated in *County of Riverside v. McLaughlin*, 500 U.S. 44, 55-56 (1991). *See, e.g., Zalewski v. City of New York*, No. 113CV7015ARRPK, 2018 WL 5113137, at *8-9 (E.D.N.Y. Oct. 19, 2018). On the other hand, unlike a Fourth Amendment seizure, "the duration of seizure or the length of the deprivation of liberty is not an element of common law false arrest." *Cain v. Cnty. of Niagara, New York*, No. 20-CV-1710S, 2022 WL 2134288, at *5 (W.D.N.Y. June 14, 2022). At this initial stage, the Court will permit the claim to proceed to service.

these defendants, or that any such statement was used against him in a criminal proceeding as required for a custodial interrogation claim. *See Deshawn E.*, 156 F.3d at 346 ("Even if it can be shown that a statement was obtained by coercion, there can be no Fifth Amendment violation until that statement is introduced against the defendant in a criminal proceeding."); *Kittle v. Brady*, No. 23-CV-1790 (JMA) (LGD), 2025 WL 2466996, at *5 (E.D.N.Y. Aug. 27, 2025) (finding that plaintiff "failed to state a claim of a violation of his rights under the Fifth Amendment" where he did "not allege that he made any statements to Defendants during th[e] alleged interrogation that were used against him in a subsequent criminal trial").

For these reasons, Plaintiff's Fifth Amendment claim is dismissed.

4. Access to Courts Claim

As the initial screening order explained (ECF No. 7 at 16 n.16), in order to plausibly allege a First Amendment denial of access to courts claim, a plaintiff may plausibly allege a First Amendment denial of access to courts claim by showing "that a defendant caused 'actual injury,' *i.e.*, took or was responsible for actions that 'hindered . . . efforts to pursue a [non-frivolous] legal claim.'" *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) (citation modified); *see Kaminski v. Semple*, 796 F. App'x 36, 39 (2d Cir. 2019) (summary order) ("Actual injuries include the dismissal of a complaint for a technical deficiency that would have been cured with appropriate legal facilities, or that a prisoner was 'stymied' from bringing an arguably actionable claim by the 'inadequacies of the law library.'" (citation modified)).

Plaintiff's access to courts claim again focuses on his time in custody in the hospital and delay in any formal indictment or criminal charges being brought against him. Plaintiff alleges that he was denied "access to the courts" because "[t]he detectives had a headstart to gather information" about his case and Plaintiff was not able to "tell the courts [his] side of what really happened." ECF No. 10 at 33.

Plaintiff's allegations do not fit the elements of an access to courts claim. In particular, Plaintiff has not identified an actual injury or explained how he was hindered from bringing a claim, besides alleging that he could not give the court his account of what happened. Courts have generally found that "delays in communicating with the courts or delays in the ability to work on a legal action do not rise to the level of a constitutional violation." *Murphy v. Feliciano*, No. 3:17-CV-269 (VLB), 2017 WL 3698490, at *4 (D. Conn. Aug. 25, 2017) (collecting cases) (no actual injury where plaintiff alleged denial of access to prison law library delayed his release because it prevented him from filing a timely motion for bond reduction with the court). Plaintiff ultimately appeared before the court for his arraignment and subsequent proceedings, and he has not explained how the delay in his arraignment prejudiced his claims or criminal case.

Accordingly, this claim is dismissed.

5. <u>Negligent Infliction of Emotional Distress ("NIED")</u>

As the initial screening order explained (ECF No. 7 at 16 n.14), "[t]o plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Eckert v. City of Buffalo*, No. 22-CV-540-LJV, 2025 WL 2836547, at *23 (W.D.N.Y. Oct. 6, 2025) (quoting *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021)). The last element requires "a specific, recognized type of negligence that obviously has the propensity to cause extreme emotional distress 'such as the mishandling of a corpse or the transmission of false information that a parent or child had died.'" *Selvam v. United States*, 570 F. Supp. 3d 29, 50 (E.D.N.Y. 2021) (quoting *J.H. v. Bratton*, 248 F. Supp. 3d 401, 416 (E.D.N.Y. 2017)), *aff'd*, No. 21-2513-CV, 2022 WL 6589550 (2d Cir. Oct. 11, 2022).

"To the extent that a claim for [NIED] is based upon injury incident to an arrest, a plaintiff must resort to the traditional tort remedies of false arrest, false imprisonment, and malicious

9

prosecution." *Dollard v. City of New York*, 408 F. Supp. 3d 231, 238-39 (E.D.N.Y. 2019); *Crews v. Cnty. of Nassau*, 996 F. Supp. 2d 186, 214 (E.D.N.Y. 2014) ("[A] claim for [NIED] should be dismissed where the conduct for the underlying claim may be redressed by way of traditional tort remedies.").

Here, Plaintiff has not alleged "a specific, recognized type of negligence that obviously has the propensity to cause extreme emotional distress." *Bratton*, 248 F. Supp. 3d at 416. Moreover, Plaintiff's NIED claim is squarely "rooted in the same conduct that underlies [his] Fourth Amendment-derived claims[,]" and to the extent that he "suffered any emotional damage from these claims, it is entirely subsumed by them." *Dollard*, 408 F. Supp. 3d at 239. Accordingly, the Court dismisses Plaintiff's NIED claim.

## CONCLUSION

For the above reasons, Plaintiff's Fourth Amendment excessive force claim against VanDeMar; Fourth Amendment excessive pre-arraignment detention and false imprisonment claims against all defendants except VanDeMar; and Sixth Amendment right to counsel claim against Mackenzie and Klein may proceed to service. Plaintiff's remaining claims are dismissed without further leave to amend.

## ORDER

IT HEREBY IS ORDERED that Plaintiff's Fourth Amendment excessive force claim against VanDeMar; Fourth Amendment excessive pre-arraignment detention and false imprisonment claims against all defendants except VanDeMar; and Sixth Amendment right to counsel claim against Mackenzie and Klein shall proceed to service; and it is further

ORDERED that Plaintiff's remaining claims are dismissed without leave to amend; and it is further

ORDERED the Clerk of the Court shall cause the United States Marshals Service to serve copies of the summons, the amended complaint, and this order upon all defendants, without Plaintiff's

10

payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor; and it is further

ORDERED that, upon service, pursuant to 42 U.S.C. § 1997e(g)(2), the defendants shall answer or respond to the remaining claims of the complaint; and it is further

ORDERED that the Clerk of Court is directed to forward a copy of this order and the amended complaint to Carl Gaul, City of Rochester Municipal Attorney at Carl.Gaul@cityofrohcester.gov; and it is further

ORDERED that pursuant to Western District of New York Local Rule of Civil Procedure 5.2(d), Plaintiff must immediately notify the Court in writing each time his address changes. Failure to do so may result in dismissal of the action with prejudice.

IT IS SO ORDERED.

Dated:          May 5 , 2026
                Rochester, New York


                                              _____
                                              HON. FRANK P. GERACI, JR.
                                              United States District Court
                                              Western District of New York

11